IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 9:23-CR-00007-MAC |
| vs. | |
| VERNON TAYLOR, | |
| Defendant. | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

On May 5, 2023, the Defendant, Vernon Taylor, was indicted in the Eastern District of Texas for a violation of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute 100 grams or more of phencyclidine (PCP) (actual), a Schedule II controlled substance.)  Pending before the court is Taylor's *Motion to Suppress* (Doc. #19).[1]    The Government filed a response to the Defendant's motion (Doc. #21), and the undersigned magistrate judge heard testimony and oral argument on September 26, 2023.  The undersigned recommends denying Taylor's Motion to Suppress because the traffic stop was lawful and the detention was not unnecessarily delayed.

**I.  Relevant Facts**

During the hearing, Texas Department of Public Safety Trooper Corey Seymore testified to the facts and circumstances of Taylor's traffic stop, detention, and arrest and the Government introduced body camera footage (and transcript) of the stop.[2]  Trooper Seymore explained that in the early morning hours of September 21, 2022, he was travelling northbound on Highway 59 in

---

[1]     This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. TEX. LOCAL R. CR-59(a).

[2]     The transcript and video footage were admitted into evidence as Government's Exhibit 1, 2A, and 2B without Taylor's objection.

Nacogdoches County when he encountered Taylor, who was driving southbound in a Dodge Nitro SUV with only one functioning headlight.[3]  Trooper Seymore performed a U-turn and initiated the stop.  As he approached the vehicle, he noticed that the license plate light was out, the license plate was obscured by an illegal cover, and that a passenger was not wearing a seatbelt.  There were three occupants in the vehicle—Taylor and two female passengers.  April Lee was seated in the front passenger seat and Tricia Paris was in the rear seat.  When approaching the vehicle, he also observed there was no luggage in the cargo compartment of the SUV.

Trooper Seymore conversed with Taylor through his window regarding the reason for the stop.  During this exchange, he observed multiple rubber bands hanging from the gear shift.  He testified that rubber bands can sometimes be used for bulk currency, which can be associated with criminal activity.  Trooper Seymore asked Taylor to exit the vehicle so he could show him the license plate violations.  While the pair were standing behind the vehicle, Trooper Seymore asked Taylor for details on his travel, including his destination and reasons for travel.  Taylor advised that he was travelling to St. Louis from Houston, where he had been visiting his little brother and cousin for a week.  Taylor informed Trooper Seymore that the other passengers had accompanied him for the entire week in Houston.

The transcript of the stop indicates that Trooper Seymore asked Taylor if there was anything illegal in the vehicle and Taylor responded, "No, no, no, no, no."  Next, Trooper Seymore told Taylor, "No? Okay.  Alright.  Well, give me just a few minutes.  It's gonna be a warning on your headlight, your license plate light, and your license plate cover."

Next, Trooper Seymore returned to his patrol car and called dispatch for a background check on the car's occupants.  He learned that Taylor was on supervised release where the

---

[3]     Having a defective headlight is a violation of Texas Transportation Code § 547.3215.

original conviction was conspiracy to distribute PCP.  Upon learning this information, Trooper

Seymore returned to Taylor and asked for permission to search his vehicle.  Taylor does not

dispute that he gave valid consent to the search of his vehicle.  Trooper Seymore also received

consent from Lee to search her wallet and from Paris to search her backpack located on the back

seat of the vehicle.[4]

## II. Defendant's Motion and the Government's Response

The thrust of Taylor's motion is that although Trooper Seymore was justified in stopping

the car and detaining him for a brief period of time after the stop, the detention eventually

became unreasonable.  Specifically, he argues that once Trooper Seymore informed Taylor that

he would only be issued a warning,

> all evidence necessary to prosecute that offense has been obtained.  No further
> evidence of the offenses of [d]efective head lamp, defective license plate lamp
> and unauthorized cover on license plate was going to be found either on the
> person of the offender or in any compartment of the car.  By requesting a criminal
> history check, Trooper Seymore prolonged the stop beyond the time reasonable
> required to complete the stop's mission and because Trooper Seymore did not
> request the criminal history check out of concern for his safety[,] the check did
> not fall within the mission of the traffic stop.

(Doc. # 19, p. 3.)

The Government responds that stopping Taylor's vehicle was justified at its inception, as

Taylor violated certain provisions of the Texas Transportation Code.  (Doc. # 21, p. 9.)  During

the traffic stop, Trooper "Seymore developed reasonable suspicion that Taylor was engaged in

criminal activity beyond the traffic violations[, which] allowed for the continued detention of

Taylor and the passengers as [Trooper] Seymore worked to confirm or dispel his suspicion."

(*Id.*)

---

[4]      A search of Paris' backpack revealed THC gummies.

### III. Legal Standard

The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Because traffic stops are considered more similar to investigative detentions than formal arrests, the legality of traffic stops for Fourth Amendment purposes is analyzed under the standard articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). *Terry* requires that courts apply a two-step "reasonable suspicion" inquiry to: 1) determine whether the officer's action was justified at its inception, and 2) determine whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *United States v. Zamora*, 661 F.3d 200, 204 (5th Cir. 2011). Where there is no warrant, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005).

For a traffic stop to be justified at its inception, an officer must have objective reasonable suspicion that criminal activity is afoot. *United States v. Martinez,* 486 F.3d 855, 859 (5th Cir. 2007). In making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *See, e.g., United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).

In the alternative, the officer must have probable cause[5] that the motorist has committed a traffic violation. *Whren v. United States*, 517 U.S. 806, 812 (1996). However, the legal justification for the stop must be objectively grounded. *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999). If the supposed traffic violation that formed the basis for a stop was in fact not a violation of state law, there is no objective basis for probable cause justifying the stop. *United States v. Miller,* 146 F.3d 274, 279 (5th Cir. 1998). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999).

## IV. Discussion

Here, the parties do not dispute that the first prong of the *Terry* test is satisfied. Trooper Seymore testified that he initiated a traffic stop when he observed Taylor's vehicle had a defective headlight in violation of Texas Transportation Code § 547.3215. Accordingly, the issue before the court focuses on the second prong of the *Terry* analysis—whether Trooper Seymore's actions, after the legitimate stop, "'were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop.'" *United States v. Conley*, No. 22-10923, 2023 WL 5938185, at *1 (5th Cir. Sept. 12, 2023) citing *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc).

Regarding the second prong of the *Terry* analysis, the general rule is that the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop,

---

[5] There is some inconsistency in case law whether there must be reasonable suspicion or probable cause that a traffic violation occurred. However, the Fifth Circuit has stated that both of these standards result in the same requirement—an officer must have an objective basis that the alleged traffic violation forming the reason for the stop was based on a legitimate violation of state law. *See United States v. Raney*, 633 F.3d 385, 390-392 (5th Cir. 2011) ("Because an officer's reasonable suspicion that a traffic violation occurred requires the same objective basis as probable cause for a traffic stop, *i.e.*, that a traffic law was actually violated, we need not undertake a separate analysis".) S*ee also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (Officers need only "a particularized and objective basis" for suspecting the person was breaking the law.)

unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507. Courts will examine whether an officer "diligently pursued a means of investigation that was likely to confirm or dispel their suspicion quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. *Brigham*, 382 F.3d at 507-08. An officer may also ask the driver about the purpose and itinerary of his trip. *Id.* at 508. The officer's questions do not need to be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which *Terry's* second prong is aimed." *Id.* An officer may also permissibly identify a passenger and run computer checks on the passenger's driver's license and background. *See United States v. Pack,* 612 F.3d 341, 351 (5th Cir. 2010) *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010), referencing *Brigham*, 382 F.3d at 509. Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention. *Brigham*, 382 F.3d at 510; *see also Santiago*, 310 F.3d at 342; *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000); *United States v. Dortch*, 199 F.3d 193, 200 (5th Cir. 1999), *corrected on denial of reh'g*, 203 F.3d 883 (5th Cir. 2000).

However, there is a recognized exception to this rule if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled. In that instance, the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *See Brigham*, 382 F.3d at 507; *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). "Reasonable suspicion exists when the detaining officer can point to specific and

6

articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the . . . seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). Reviewing courts making reasonable suspicion determinations "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273. In evaluating whether or not an officer's suspicion is reasonable, "due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274. Additionally, the Fifth Circuit has abrogated the requirement that an officer must have a "particularized suspicion" of a specific crime when developing a reasonable suspicion. *Pack*, 612 F.3d at 355, citing *Brigham*, 382 F.3d at 517.

In this case, Trooper Seymore testified that the following facts raised additional reasonable suspicion of further criminal activity apart from Taylor's traffic violation: 1. the presence of rubber bands around the gear shift; 2. lack of luggage despite week-long travel plans; and 3. the fact that Taylor was on supervised release for prior criminal charges (drug trafficking). Armed with this knowledge, Trooper Seymore requested Taylor's consent to search his vehicle less than fourteen minutes into the stop.[6] The search resulted in the discovery of one 64-ounce bottle and one 12-ounce bottle containing a total of 179.17 grams of PCP (Actual). (Doc. # 21, p. 4.)

---

[6] Taylor does not dispute that he consented to the search of his vehicle. Furthermore, during the search, Trooper Seymore's reasonable suspicion was confirmed when Taylor's passengers gave contradictory statements regarding their travel plans.

A. *Rubber bands*

Trooper Seymore testified that Taylor had unsecured rubber bands hanging from the gear shift of his vehicle, which aided his suspicion that criminal activity was afoot because rubber bands can be related to bulk currency.  Government's Exhibit 3G is a photograph that shows 3 large rubber bands hanging on the right-side of Taylor's steering wheel.  Some courts have determined that rubber bands, among other factors, can contribute to reasonable suspicion to delay a stop.  *United States v. Goins*, No. 4:20-CR-380, 2021 WL 37697, at *4 (N.D. Ohio Jan. 5, 2021) (30 small, loose rubber bands *and* nervous behavior create reasonable suspicion to extend a traffic stop and allow for canine search).

Here, Taylor had only *three* unsecured rubber bands hanging from his steering wheel.[7] Their existence in Taylor's vehicle—without more—probably does not justify reasonable suspicion to prolong the traffic stop.  See *United States v. Hernandez*, 470 F. Supp. 3d 114, 130 (D.N.H. 2019) (holding that two unopened bags of rubber bands in rental car are not, as a lone factor, sufficient to establish reasonable suspicion of additional criminal activity).  However, officers are allowed to draw on their own experience and specialized training to make deductions about the cumulative information available to them that might well elude an untrained person. *United States v. Grant*, 349 F.3d 192, 197 (5th Cir. 2003), *cert. denied* 540 U.S. 1227 (2004).  Because the officer's suspicion is based on a totality of circumstances, the undersigned finds that Trooper Seymore was justified in relying on the rubber bands as a contributing factor for reasonable suspicion.

---

[7]    While the photo is not entirely clear, it seems there are three intact rubber bands and one broken band hanging from the gear shift.

### B. Lack of Luggage

Reasonable suspicion can also arise from the officer's observation that there is very little luggage in the automobile given the stated purpose of the trip, or if the defendant provides inconsistent travel plans. *See United States v. Garcia,* 883 F.3d 570, 572 (5th Cir. 2018) (dicta) (insufficient luggage for a trip can be one of several factors to consider in determining whether officer had legitimate reasonable suspicion to extend stop); *United States v. Schmidt*, No. 5:14-CR-391-DAE, 2014 WL 4784238, at *7 (W.D. Tex. 2014) (same); *United States v. Wisniewski,* 358 F. Supp. 2d 1074, 1092 (D. Utah 2005), *aff'd*, 192 F. App'x 749 (10th Cir. 2006) (same).[8]

Here, as Trooper Seymore returned to his patrol car to conduct background checks, he remarked into his body camera, "There's not enough luggage in there for one of 'em to be gone for a week. Let along all three." The undersigned recognizes that a total lack of luggage is inconsistent with Taylor's statement that he travelled to Houston for a week with two other passengers. Accordingly, the undersigned finds that this factor also contributes to reasonable suspicion.

### C. Taylor's Criminal History

A driver's criminal history should not serve as the sole basis for reasonable suspicion. *See United States v. Labrador-Peraza*, 563 F. Supp. 3d 563, 574 (W.D. La. 2021); *United States v. Alvarado*, 989 F. Supp. 2d 505, 519 (S.D. Miss. 2013). However, criminal history, in combination with other factors, can contribute to reasonable suspicion. *United States v. Conley*, No. 22-10923, 2023 WL 5938185, at *1 (5th Cir. Sept. 12, 2023); *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003) (discussing factors for reasonable suspicion to extend stop).

---

[8]       If the amount of luggage is reasonably consistent with the defendant's itinerary, that factor should not be suspicious. *United States v. Wald*, 216 F.3d 1222, 1227 (10th Cir. 2000) (two pieces of luggage for two people on a purported weekend road trip to Las Vegas is not at all suspicious).

Taylor's criminal background was revealed to Trooper Seymore approximately 12 ½ minutes into the stop and showed that he had a prior conviction for conspiracy to distribute PCP. Therefore, Trooper Seymore's reliance on Taylor's criminal history as a *factor* of reasonable suspicion was proper. *Gonzalez*, 328 F.3d. at 758 (5th Cir. 2003) (listing prior arrest for drug trafficking as a factor supporting reasonable suspicion).

## V. Recommendation

The issue before the court is whether Trooper Seymore had reasonable suspicion of criminal activity to prolong Taylor's traffic stop. Recently, the Fifth Circuit Court of Appeals addressed this issue in a case with similar facts. In *United States v. Conley*, the defendant appealed the district court's denial of his suppression motion. *United States v. Conley*, No. 22-10923, 2023 WL 5938185, at *1 (5th Cir. Sept. 12, 2023). Conley, like Taylor, was stopped based on a legitimate, uncontested traffic violation that he claims resulted in an unconstitutional delay of the stop. In considering the second *Terry* prong, the Fifth Circuit considered specific facts that contributed to reasonable suspicion to delay Conley's detention: Conley was driving a vehicle registered to someone else, on supervised release for felon in possession of a firearm, and present in an area known for drug trafficking and prostitution. *Id.* at *1. The Court recognized that the officer's reasonable suspicion further piqued when he observed gang tattoos and when Conley could not present a valid driver's license. Ultimately, the Court concluded:

> the court did not err in concluding the Officer developed reasonable suspicion of criminal activity apart from Conley's traffic violation. Certainly, [t]he police must diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly. But, the Officer met that requirement because less than five minutes passed between when he informed Conley of the reason he was stopped and Conley's consent to search the vehicle.

*Id.* at *2 (internal citations omitted).  Like the Court in *Conley,* the undersigned finds that the detention did not violate the second prong of *Terry* because Trooper Seymore developed reasonable suspicion of additional criminal activity based on articulable factors.  As the Fifth Circuit has explained,

> [a]n officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime. If the officer develops reasonable suspicion of *additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time* while appropriately attempting to dispel this reasonable suspicion.

*Pack*, 612 F.3d at 350 (internal citations omitted) (emphasis added); s*ee Santiago,* 310 F.3d at 341–42 ("Once a computer check is completed and the officer either issues a citation or determines that no citation should be issued, the detention should end and the driver should be free to leave."); *United States v. Valdez,* 267 F.3d 395, 398 (5th Cir. 2001) ("[O]nce an officer's suspicions have been verified or dispelled the detention must end unless there is additional[,] articulable reasonable suspicion.")  "[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Lopez–Moreno,* 420 F.3d at 431.

The evidence shows that prior to asking Taylor for consent to search the vehicle, Trooper Seymore observed sufficient articulable facts to establish reasonable suspicion that Taylor was engaged in criminal conduct that justified his continued detention.  Accordingly, the undersigned recommends denying the Defendant's *Motion to Suppress*.

## IV.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 19th day of October, 2023.

_____
Zack Hawthorn
United States Magistrate Judge